UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SUSIE MONDAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:24-cv-284-TAV-DCP |
| | ) |
| UT-BATTELLE, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the Court on defendant's motion for summary judgment [Doc. 15]. Plaintiff has responded [Doc. 18], and defendant replied [Doc. 19]. This matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, defendant's motion for summary judgment [Doc. 15] will be **GRANTED**, and this case will be **DISMISSED**.

**I.  Background**

This action arises from the circumstances surrounding plaintiff's termination from her position as a Senior Administrative Assistant at the Oak Ridge National Laboratory ("ORNL") in Oak Ridge, Tennessee [*see* Doc. 1]. Defendant is a private not-for-profit limited liability company that manages ORNL for the U.S. Department of Energy [Doc. 16-1, p. 9]. Plaintiff worked in the Information Systems Group ("ISG") within the Integrated Operations Support Division ("IOSD") [Doc. 18-23, pp. 6, 20]. Plaintiff reported to Cheryl Shanklin, ISG Group Leader, and Shaklin reported to Kim Jeskie, IOSD Director [Doc. 18-20, p. 3]. Plaintiff worked part-time on a 32-hour a week schedule as the only

administrative assistant in a building supporting approximately 20 people [Doc. 16-1, pp. 184, 590–91]. Plaintiff lives in Jacksboro, Tennessee, which is approximately 1 hour and 30 minutes from ORNL [*Id.* at 144–45].

### A. Plaintiff's Job Duties

When plaintiff was present at ORNL, she managed the conference room schedule, put away supplies, helped with copier issues, worked with vendors who replaced equipment, formatted documents, and helped others [Doc. 18-20, pp. 6, 9, 16]. Further, plaintiff assisted with annual events, including the F&O End of Year Safety Celebration, Supervisor Summit, and the Perfect Attendance Breakfast [Doc. 18-23, pp. 8, 11, 12, 16]. However, plaintiff asserts that her responsibilities related to those events were minimal and could be performed remotely [*Id.*].

Further, a job description[1] for the "administrative assistant" position at ORNL includes various "major duties," such as maintaining the office atmosphere in a professional manner, establishing and maintaining effective working relationships, and assisting and participating in team activities [Doc. 16-1, p. 504]. This description states that the "position is located on-site at our facility in Oak Ridge, Tennessee" [*Id.*]. Shanklin testified that although this job description was not necessarily created for plaintiff's position, it reflects some of the duties plaintiff would have done [Doc. 18-20, p. 7; Doc. 18-23, pp. 28–29].

---

[1] Defendant sent plaintiff this job description on August 1, 2022, so that plaintiff's optometrist could complete plaintiff's accommodation request related to a disability [Doc. 16-1, p. 506]. It is unclear when the description was created or whether plaintiff reviewed the description before accepting her position.

2

Additionally, plaintiff received performance evaluations during her employment.[2] In fiscal years 2019 and 2020, plaintiff received a score of "full contributor" [Doc. 18-15, p. 8; Doc. 18-16, p. 4]. In fiscal years 2021 and 2022, plaintiff received a rating of "successful" [Doc. 18-17, p. 5; Doc. 18-18, p. 5].

### B. Plaintiff's Disability and Requests for Remote Work Accommodations

It is undisputed that plaintiff suffers from binocular vision dysfunction, preventing her from driving to and from work [Doc. 18-23, p. 3; Doc. 16, p. 10]. Plaintiff's vision impairment does not interfere with her job once she arrives at work [Doc. 18-23, p. 3].

On November 9, 2021, plaintiff requested a temporary accommodation, requesting to work remotely until she got her MRI results [Doc. 18-3]. Plaintiff's request was approved through December 1, 2021 [Doc. 18-4]. On November 30, 2021, plaintiff requested a six-week extension of her request, which was also granted [Doc. 18-5; Doc. 18-20, pp. 14–15]. Upon expiration of this extension, Jeskie approved remote work through March 2022, but she noted that a long-term remote position was not ideal for defendant or for plaintiff to work "optimally" [Doc. 18-2].

Subsequently, plaintiff saw an eye specialist who again restricted her from driving, and defendant agreed to a three-week accommodation allowing plaintiff to work remotely [Doc. 18-6]. On August 18, 2022, plaintiff informed Shanklin that she would be working remotely for at least an additional two weeks [Doc. 16-1, p. 35].

---

[2] From March 2020 until April 2021, plaintiff worked remotely due to the COVID-19 pandemic [Doc. 16-1, p. 360; Doc. 18-20, p. 13].

3

Plaintiff worked on-site most workdays in September of 2022 until defendant determined that plaintiff's request could be handled through "situational flexibility" [Doc. 18-7, p. 2]. Situational flexibility is a "non-routine" and "short term" solution to be used when plaintiff could not find a ride to work with a co-worker [*Id.*]. In January 2023, the co-worker with whom plaintiff rode to work retired [Doc. 18-23, p. 4; Doc, 18-8, p. 1]. Defendant informed Shanklin and Jeskie that she would continue visual physical therapy through April 2023 and hoped it would help her drive [Doc. 16-1, pp. 494, 546–47]. As a result, defendant granted plaintiff's remote-work request through April 2023 [Doc. 18-23, pp. 43–44].

C. **Plaintiff's Termination**

Plaintiff continued to work remotely through July 10, 2023, when she informed defendant that "[n]othing has changed with [her] driving situation" [Doc. 18-11, p. 2]. Defendant responded that plaintiff was expected to return to work on site by July 24, 2023 [*Id.* at 1]. Plaintiff replied by requesting a "permanent remote position" [Doc. 18-12, p. 2]. In her deposition, plaintiff explained that "permanent" meant she could retire with full benefits in 2026 [Doc. 18-23, p. 24].

In a follow-up meeting, defendant proposed other methods for plaintiff to commute to work, such as a taxi, carpooling app, or a ridesharing platform like Uber or Lyft [*Id.* at 25]. Defendant also suggested, among other options, a "guest pass" so that someone else could drive plaintiff through the security portal at work [*Id.*]. Plaintiff declined these

4

options³ [*Id.*]. On August 28, 2023, defendant informed plaintiff that her request for a permanent remote work accommodation would be denied and that plaintiff needed to report to work in person by September 5, 2023 [*Id.* at 27; Doc. 18-22, p. 20; Doc. 16-1, p. 84].

After plaintiff did not return to work at ORNL on September 5th, defendant gave plaintiff a final chance to change her mind [Doc. 18-13]. Since plaintiff responded that she was unable to return to the office [Doc. 16-1, p. 582], defendant sent plaintiff a letter terminating her employment [*Id.* at 25–26].

Plaintiff now brings this action under the American Disabilities Act ("ADA"), alleging that defendant discriminated against her because of her disability [*See* Doc. 1]. Defendant moved for summary judgment on plaintiff's ADA claim [Doc. 15].

**II.     Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625

---

³ In an email on January 30, 2023, plaintiff also mentioned that she considered moving to Oak Ridge, Tennessee, but she wants to live and retire in Campbell County [Doc. 16-1, p. 494].

5

F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 252 (1986)).

III.     Analysis

   A.     Discrimination under the ADA

Defendant contends that it is entitled to summary judgment because: (1) plaintiff's essential functions required her to work in-person at ORNL; and (2) plaintiff's requested accommodation is unreasonable since the ADA does not require defendant to accommodate plaintiff's work commute [Doc. 16, pp. 18–20].  Moreover, defendant alleges that plaintiff refused other reasonable accommodations, forcing defendant to terminate plaintiff's employment when she failed to return to work in-person [*Id.* at 25].

Plaintiff responds that summary judgment is inappropriate because: (1) plaintiff was otherwise qualified for her position despite her disability; and (2) plaintiff's requested remote work accommodation was reasonable since on-site attendance was not an essential function of her position [Doc. 18, pp. 11–26].  In reply, defendant contends that plaintiff's statements prove that the essential functions of her position required her to work in-person at ORNL [Doc. 19, pp. 3–4].

The ADA prohibits discrimination "against a qualified individual on the basis of disability[.]"  42 U.S.C. § 12112(a).  One form of discrimination includes "not making *reasonable* accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]"  *Id.* § 12112(b)(5)(A) (emphasis added).

6

"To establish a prima facie claim for failure to accommodate under the ADA, [plaintiff] must show that: (1) [s]he is disabled within the meaning of the Act; (2) [s]he is otherwise qualified for h[er] position, with or without reasonable accommodation; (3) [defendant] knew or had reason to know about [her] disability; (4) [s]he requested a reasonable accommodation; and (5) [defendant] failed to provide the necessary accommodation." *Brownlow v. Alfa Vision Ins. Co.*, 527 F.Supp.3d 951, 956 (M.D. Tenn. 2021) (citing *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018)). If plaintiff meets her burden, then the burden shifts to defendant to show "that the proposed accommodation would impose an undue hardship on the operation of [defendant's] business." *Id.*

Here, it is undisputed that plaintiff is disabled, defendant knew about plaintiff's disability, and defendant refused to provide plaintiff's requested accommodation of continuing remote work [*See* Doc. 16, pp. 18, 25–26]. Therefore, the contested issues are: (1) whether plaintiff is otherwise qualified for her position with or without a reasonable accommodation; and (2) whether plaintiff's requested accommodation was reasonable.

   1. **Otherwise Qualified**

Defendant claims that working in-person is an essential function of plaintiff's position, meaning that she is not a "qualified individual" under the ADA [Doc. 16, pp. 20–25]. Defendant relies, in part, on a job description purportedly requiring on-site work and on plaintiff's testimony and emails that allegedly acknowledge this expectation [*Id.*].

Plaintiff counters that on-site work is not essential because she previously performed her job remotely, many of her duties are procedural, and she had access to the same

7

technology when she worked remotely [Doc. 18, pp. 13–25]. In support, plaintiff relies on her testimony that her functions could be performed remotely, Shanklin's testimony, and performance evaluations that she received during periods of remote work [*Id.*].

In reply, defendant contends that plaintiff could not perform *all* essential functions remotely [Doc. 19, pp. 3–8]. Defendant rebuts plaintiff's performance evaluations with Jeskie's testimony that she received several concerns about plaintiff's availability while plaintiff worked remotely [*Id.* at 17]. Defendant also argues that plaintiff mischaracterized Shanklin's testimony, which allegedly shows that plaintiff's absence shifted work onto other employees on at least one occasion [*Id.* at 17–19].

Under the ADA, a "qualified individual" is an "individual who, with or without reasonable accommodation, can perform the *essential functions* of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added). "Essential functions are 'the fundamental job duties of the employment position the individual with a disability holds or desires.'" *Brownlow*, 527 F.Supp.3d at 956–57 (quoting *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014)). The ADA mandates that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

Generally, "regularly attending work on-site is essential to most jobs, especially the interactive ones[.]" *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015). In fact, the Sixth Circuit has recognized that, in most jobs, "the employer will require regular and

8

predictable on-site attendance from all employees (as evidenced by its words, policies, and practices)." *Id.* at 762.

Nevertheless, the Court considers several factors to determine whether a job function is essential: "(1) the employer's judgment [as to which functions are essential]; (2) the written job description; (3) the amount of time spent performing the function; (4) the consequences of not requiring performance of the function; (5) the work experience of past incumbents of the position; and (6) the current work experience of incumbents in similar jobs." *Brownlow*, 527 F.Supp.3d at 957 (quoting *Keith v. Cnty. of Oakland*, 703 F.3d 918, 925–26 (6th Cir. 2013)).

### a. Employer's Judgment

According to defendant's judgment, working on-site at ORNL was an essential function of plaintiff's position [Doc. 16, pp. 20–25]. Paul Estes, HR Business Partner Lead at ORNL, testified that "the main purpose of an administrative assistant is to be on-site supporting the manager and the organization that they're assigned to for just the day-to-day needs, [and] emergency situations that may come up" [Doc. 18-22, p. 13]. Moreover, in a team meeting, defendant's Interim Lab Director, Jeff Smith, confirmed that the "position of administrative assistant is still viewed as a full-time on-campus role" [Doc. 16-1, p. 13].

The record also shows that, on multiple occasions, defendant informed plaintiff that her temporary remote work accommodations could not be a permanent solution. Specifically, in 2022, Jeskie explained that defendant could "afford to continue [the accommodation] for a short period of time . . . to see if her health condition resolves, but it cannot be a permanent solution" [*Id.* at 125]. In 2023, Jeskie cautioned that plaintiff's

9

Case 3:24-cv-00284-TAV-DCP   Document 22   Filed 01/15/26   Page 9 of 18   PageID #: 1043

"position has been determined to be most effective onsite, and it will be the goal to return [plaintiff's] position to onsite status" [*Id.* at 75].

Plaintiff's deposition and emails further indicate that she understood defendant's expectation for her to perform her role on-site. Specifically, on March 7, 2022, plaintiff acknowledged in an email to Jeskie and Shanklin, "I know and understand that we are needed and required to be onsite" [*Id.* at 536–37]. On July 20, 2023, plaintiff emailed Estes and again stated, "I understand that according to the emails that my position is an onsite position" [*Id.* at 496]. During her deposition, defendant confirmed that she understood defendant expected her position "to be one that was performed at ORNL" [Doc. 18-23, p. 31]. Thus, defendant's "words, policies, and practices" clearly indicate that it required "regular and predictable on-site attendance." *Ford Motor Co.*, 782 F.3d at 762.

Plaintiff's assertion that she could perform her essential job functions remotely is insufficient to create a genuine fact dispute. As the Sixth Circuit has stated, "we do not 'allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience.'" *Id.* at 764 (quoting *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004)). Although the evidence suggests that some of plaintiff's duties could have been performed at home, Jeskie testified that plaintiff's remote work created a "void" that concerned her [Doc. 18-21, p. 17].

Jeskie stated that defendant's goal was to create an atmosphere where employees could "walk in and get answers to the things that they need" [*Id.*]. Further, Jeskie testified that she received "availability" concerns about plaintiff from other employees, and she was "asked repeatedly to allow other people to become qualified on what [plaintiff] was doing"

10

Case 3:24-cv-00284-TAV-DCP   Document 22   Filed 01/15/26   Page 10 of 18
PageID #: 1044

[*Id.* at 11, 17]. The evidence shows that these concerns increased in 2023 when plaintiff worked remotely for an extended period [*Id.* at 17]. While plaintiff claims that she was available and that her availability was communicated to the individuals with concerns, "the essential-job-function inquiry does not require employers to lower their standards by altering a job's essential functions." *Ford Motor Co.*, 782 F.3d at 764. Therefore, defendant's judgment weighs in favor of a finding that on-site attendance was an essential function of plaintiff's position.

### b. Job Description

Additionally, the job description provided to plaintiff stated that the administrative assistant position is located "on-site at our facility in Oak Ridge, Tennessee" [Doc. 16-1, p. 504]. When confronted with the job description at her deposition, plaintiff did not dispute the accuracy of the following listed "major duties": (1) the duty to "[m]aintain office atmosphere in a professional and congenial manner and receive and assist visitors"; (2) the duty to "[e]stablish and maintain effective working relationships with internal and external contacts"; and (3) the duty to "[a]ssist with coordination and participate in team activities of administrative support staff across the division" which "may include participation in" meetings and special assignments [*See* Doc. 18-23, pp. 28–29]. Thus, the record reflects that plaintiff's job involves "face-to-face interaction and coordination of work with other employees" and "immediate access" to co-workers, which the Sixth Circuit has held requires being in the workplace. *See Ford Motor Co.*, 782 F.3d at 762–63 (determining that the plaintiff's position required teamwork, meetings, and onsite availability to participate in face-to-face interactions, making on-site attendance essential

11

to her position). Accordingly, the job description factor also weighs in favor of a finding that on-site attendance was essential to plaintiff's position.

### c. Consequences

Furthermore, although defendant permitted plaintiff to work remotely on a temporary basis, defendant has shown that the consequences of a long-term remote position would be significant. Specifically, Shanklin testified that plaintiff was the only administrative assistant in a building supporting approximately 20 people [Doc. 16-1, pp. 184, 590–91]. Shanklin also testified that when plaintiff was present, plaintiff managed the conference room schedule, put away supplies, helped with copier issues, worked with vendors to replace equipment, and helped others [Doc. 18-20, pp. 6, 9, 16]. During her deposition, plaintiff acknowledged that her position required ordering supplies and organizing the supply room [Doc. 18-23, p. 6].

If defendant allowed plaintiff to continue working at home, plaintiff's co-workers or supervisors would inevitably be forced to complete office tasks assigned to plaintiff. In fact, Shanklin's testimony indicates that on at least one occasion, plaintiff's absence shifted work onto other employees [Doc. 18-20, p. 29]. Jeskie further described plaintiff as defendant's "procedures point of contact for the directorate[,]" demonstrating the value of plaintiff's role at ORNL, and stated that while other employees had access to technology to perform procedures, they are "expected to be in the field 80 percent of the time" [Doc. 18-21, pp. 11–12]. Even if other employees could perform plaintiff's office tasks, "the ADA does not force employers to shift work onto other employees[.]" *Smith v. Newport*

12

Case 3:24-cv-00284-TAV-DCP Document 22 Filed 01/15/26 Page 12 of 18 PageID #: 1046

*Util.*, 129 F.4th 944, 952 (6th Cir. 2025). Thus, the consequences of a long-term remote position demonstrate that on-site work was an essential function of plaintiff's position.

### d. Plaintiff's Technology Argument

Moreover, plaintiff's argument that she had access to the same technology remotely and on-site does not create a genuine fact issue. As the Sixth Circuit noted in *Ford Motor Company*, "[i]t is 'self-evident,' . . . that 'technology has advanced' enough for employees to perform 'at least some essential job functions' at home." 782 F.3d at 765. There, the evidence in the record did not show that technology had changed "so as to make regular in-person attendance marginal for [that] job." *Id.* Likewise, here the record shows that plaintiff used email, phone, and computer, which "were equally available when courts around the country uniformly held that on-site attendance is essential for interactive jobs." *Id.* Thus, the mere fact that plaintiff possessed the same technology at home and in the office does not negate defendant's judgment that in-person collaboration is required for plaintiff's position. *See Kiesel v. Delta Air Lines, Inc.*, No. 1:23-CV-24, 2023 WL 5717940, at *4 (N.D. Ga. Sept. 23, 2024) ("The fact that it would be *possible* for plaintiff to participate in meetings through technology does not obviate [the employer's] judgment that permitting full-time remote work would not be as effective or efficient as in-person work.") (emphasis in original)).

### e. Plaintiff's Performance Evaluations

Lastly, plaintiff's performance evaluations do not create a genuine dispute of material fact. At least two of plaintiff's evaluations were based, in part, on work performed remotely due to the COVID-19 pandemic [*See* Doc. 16-1, p. 360; Doc. 18-16; Doc. 18-17;

13

Case 3:24-cv-00284-TAV-DCP   Document 22   Filed 01/15/26   Page 13 of 18
PageID #: 1047

Doc. 18-20, p. 13]. As other courts have noted, the fact that defendant permitted remote work during the pandemic does not mean that in-person work is not essential to plaintiff's position or that defendant abandoned its goal to return of returning to an in-person work environment. *See Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 644 (7th Cir. 2023) ("The fact that many employees were able to work remotely temporarily when forced to do so by a global health crisis does not mean that those jobs do not have essential functions that require in-person work over the medium to long term."); *see also Kiesel*, No. 1:23-CV-24, at *5 ("The fact that Plaintiff and his team did their jobs remotely during the pandemic . . . does not mean that in-person work is not essential to Plaintiff's position.").

In addition, while the Court acknowledges plaintiff's satisfactory performance evaluations during periods of remote work, defendant has provided sufficient evidence showing that in-person work was an essential function of plaintiff's position. And the ADA requires the Court to give deference to the employer's judgment "as to what functions of a job are essential." 42 U.S.C. § 12111(8). Therefore, plaintiff's performance evaluations are insufficient to create a genuine dispute of material fact.

In sum, defendant's judgment, the job description, and the consequences of plaintiff's remote work demonstrate that on-site work was an essential function of plaintiff's position. Accordingly, the Court finds that there is no genuine dispute of material fact regarding plaintiff's failure to qualify as a "qualified individual" under the ADA. On this basis alone, defendant is entitled to summary judgment.

### 2. Request for a Reasonable Accommodation

Even assuming *arguendo* that plaintiff could perform all of her essential job functions remotely, plaintiff's request for a "permanent" remote work accommodation is unreasonable. In its memorandum, defendant contends that plaintiff's requested accommodation is unreasonable because it is indefinite[4] in duration, and the ADA does not require an employer to accommodate plaintiff's commute to work [Doc. 16, pp. 18–20]. Moreover, defendant alleges that plaintiff refused other reasonable accommodations and insisted on an accommodation that was unreasonable as a matter of law [*Id.* at 25].

In response, plaintiff asserts that she requested a change to a "workplace condition that is entirely within [d]efendant's control and is reasonable" [Doc. 18, p. 12]. Plaintiff argues that she did not request assistance related to her commute but rather, she requested that defendant "eliminate the non-essential function of being physically on-site" to allow her to perform her position remotely [*Id.*].

A "reasonable accommodation" includes, in part, "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies." 42 U.S.C. § 12111(9)(B). An accommodation is unreasonable "if it requires eliminating an 'essential' function of the job." *Rorrer*, 743 F.3d at 1039 (citing 29 C.F.R. § 1630.2(o)). Moreover, "[a]n employee cannot make his employer provide a

---

[4] Plaintiff clarified in her deposition that her request for a "permanent" accommodation was meant to last until she could retire with full benefits in 2026 [Doc. 18-23, p. 24].

15

specific accommodation if another reasonable accommodation is instead provided." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800–01 (6th Cir. 1996).

An employee "bears the burden of proposing an accommodation that will permit her to effectively perform the essential functions of her job." *Ford Motor Co.*, 782 F.3d at 763; *Klieber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) (citations omitted) ("Generally, an ADA plaintiff 'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.'").

Here, the Court finds that plaintiff has not met this burden. This case is like *Regan v. Faurecia Automotive Seating, Inc.*, 679 F.3d 475, 480 (6th Cir. 2012), in which the Sixth Circuit held that an employee's request for a "modified work schedule for purposes of commuting during hours with allegedly lighter traffic is not a reasonable accommodation." There, the plaintiff was diagnosed with narcolepsy. *Id.* at 478. Her shift ran from 6:00 a.m. to 3:00 p.m. until her supervisor changed it to span from 7:00 a.m. to 4:00 p.m. *Id.*

The plaintiff notified her supervisor that the change would increase her fatigue and lengthen her commute because of heavier traffic. *Id.* However, her request to work from either 6:00 a.m. to 3:00 p.m. or from 7:00 a.m. to 3:00 p.m. was refused. *Id.* The plaintiff resigned and sued under the ADA. *Id.* On appeal from summary judgment, the Sixth Circuit agreed that "[w]hile an employer is required to provide reasonable accommodations that eliminate barriers in the work environment, an employer is not required to eliminate those barriers which exist outside the work environment." *Id.* at 480.

Just like the plaintiff in *Regan*, plaintiff here seeks an accommodation because she has difficulty commuting to work. It is undisputed that plaintiff's vision impairment does

16

not interfere with her job as long as she does not have to commute to work [Doc. 18-23, p. 30]. Thus, plaintiff's concerns about her work commute go beyond defendant's duty to accommodate under the ADA. Although plaintiff attempted to distinguish *Regan* on the grounds that in-person work was an essential function of the plaintiff's position, that case does not expressly address the essential function issue [*See* Doc. 18, p. 12].

Additionally, in *Zaffino v. Metro Government of Nashville and Davison County*, 688 F. App'x 356, 359 (6th Cir. 2017), the Sixth Circuit held that "the ADA does not require an employer to make accommodations just because they might be in an individual's interest." There, the Sixth Circuit determined that an employer does not have the duty to accommodate an employee's commute and noted that "the ADA's requirement to accommodate extends only as far as reasonably necessary to allow qualified, disabled individuals to perform the essential functions of a job." *Id.*

Furthermore, the Sixth Circuit has distinguished a request to work remotely "for a limited time *rather than an indefinite period*." *Mosby-Meachem v. Mem. Light, Gas, & Water Div.*, 883 F.3d 595, 605 (6th Cir. 2018) (emphasis added). Unlike the plaintiff in *Ford Motor Company* who sought to work remotely up to 4 days a week indefinitely, the plaintiff in *Mosby-Meachem* requested a 10-week remote work accommodation. *Compare Ford Motor Co.*, 782 F.3d at 759 (finding that the plaintiff's request was unreasonable), *with Mosby-Meachem*, 883 F.3d at 604–05 (finding that the plaintiff's request was reasonable). In *Mosby-Meachem*, the Sixth Circuit explained that testimony from other employees demonstrated that the plaintiff could perform "all" essential functions and work "effectively" from home during the 10-week remote period. 888 F.3d at 604–05.

17

Here, plaintiff requested a "permanent" remote work accommodation, lasting at least three years, making this case more like *Ford Motor Company.* than *Mosby-Meachem*. Further, plaintiff has not produced evidence showing that she could "effectively" perform "all" the essential job functions of her job remotely on an indefinite basis, or at least until her retirement. In fact, plaintiff conceded that her job was "95%" procedures, meaning that at least some of her functions could not be performed remotely [Doc. 16-1, p. 496]. The record also shows that defendant provided plaintiff with multiple alternatives, including, but not limited to, taxi, carpooling, ridesharing platforms, and a guest pass, all of which plaintiff refused [Doc. 18-23, p. 25]. The Sixth Circuit has noted that "[a]n employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." *Hankins*, 84 F.3d at 800–01.

Defendant has no duty to accommodate plaintiff's permanent remote work request simply because it is in her interest. *See Zaffino*, 688 F. App'x at 359. Accordingly, the Court finds that there is no genuine dispute of material fact as to plaintiff's ADA claim because: (1) plaintiff is not a "qualified individual" under the ADA; and (2) even if she was, plaintiff's request for a "permanent" remote position is unreasonable.

IV. **Conclusion**

For the reasons set forth above, defendant's motion for summary judgment [Doc. 15] is **GRANTED**, and this case is **DISMISSED**. An appropriate judgment order will follow.

IT IS SO ORDERED.

                                        s/ Thomas A. Varlan
                                        UNITED STATES DISTRICT JUDGE